UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                              Plaintiff,

                                                SENTENCING MEMORANDUM

v.                                              Criminal Action No.:
                                                5:15-CR-00081-001 (NAM)

ANDREW RAYMOND,

                              Defendant.
_____

Counsel submits this Memorandum on behalf of Andrew Raymond.


On July 26, 2017, Defendant, Andrew Raymond, was found guilty by jury verdict of Conspiracy to Possess with Intent to Distribute and Distribute Controlled Substance Analogues, in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(C) and Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h), 18 U.S.C. 1956(a)(1)(A)(i), and 18 U.S.C. § 1956(a)(2)(A) in connection with events that were alleged to have occurred from on or about April 2013 through April 14, 2015 in the Northern District of New York.


The defendant submits that the most closely related controlled substance to the substances at issue here is marijuana, therefore, making the appropriate conversion ratio for sentencing purposes "1 to 1".

The Probation Department assesses Mr. Raymond's base offense level as "34." The Probation Department arrives at their recommendation by finding the 104,143.9 grams of the substances seized in this case are most closely related to THC and then converting them to marijuana at the rate of 1 gram of substance to 167 grams of marijuana. The Probation Department concedes that their recommendation regarding the conversion ratio is not based upon an independent analysis but is entirely based upon the Government's position that THC is the most closely related controlled substance. *PSR ¶ 30.*

The Defendant objects to the base level offense computed by the Probation Department and urges the court to find that marijuana is the most closely related controlled substance to the substances that are the subject of this case. If the Court finds that marijuana is the most closely related controlled substance then the conversion ratio is "1 to 1". A conversion ratio of "1 to 1" based on 104.1439 kilograms yields a base level offense of "24" and a total offense level of "32".

The Defendant intends to present testimony at the sentencing hearing by pharmacologist Dr. Anthony DeCaprio, Ph.D., in support of the position that marijuana is the most closely related controlled substance to the substances seized in this case.

In addition to objecting to the Probation Department's finding that THC is the most closely related controlled substance, the Defendant objects to being held accountable for a total of 104.143.9 kilograms of substances. The defense presented expert testimony at trial challenging the allegation that the substances were controlled substance analogues. Due to the absence of a

special verdict sheet, it is impossible to know whether the jury agreed with the defense position that one or more of the substances were not analogues.

The general verdict sheet utilized in this case created a sentencing ambiguity because there is no way for this Court to know which of the substances alleged in the superseding indictment the jury found to be controlled substance analogues.   The substances alleged in the superseding indictment are as follows:

XLR-11

5F-PB-22

AB-PINACA

5-F-AB-PINACA

APP-CHIMINACA

The jury was instructed as follows regarding "Unanimity":

IN ORDER TO CONVICT EACH DEFENDANT OF COUNT ONE, YOU MUST UNANIMOUSLY AGREE THAT THE GOVERNMENT HAS PROVEN AT LEAST ONE OF THE SUBSTANCES IDENTIFIED IN COUNT ONE OF THE SUPERSEDING INDICTMENT QUALIFIES AS A CONTROLLED SUBSTANCE ANALOGUE. YOU NEED NOT, HOWEVER, UNANIMOUSLY AGREE ON WHICH OF THE SUBSTANCES QUALIFIES AS A CONTROLLED SUBSTANCE ANALOGUE.

ADDITIONALLY, IT IS NOT NECESSARY FOR THE GOVERNMENT TO PROVE THAT A DEFENDANT CONSPIRED TO POSSESS WITH THE INTENT TO DISTRIBUTE OR TO DISTRIBUTE EVERY SUBSTANCE LISTED IN COUNT ONE. IT IS ONLY NECESSARY THAT YOU FIND THAT THE GOVERNMENT HAS PROVEN BEYOND A REASONABLE DOUBT THAT A DEFENDANT KNOWINGLY CONSPIRED TO DISTRIBUTE OR POSSESS WITH THE INTENT TO DISTRIBUTE A CONTROLLED SUBSTANCE ANALOGUE. AGAIN, YOU NEED NOT UNANIMOUSLY AGREE ON WHICH OF THE SUBSTANCES A DEFENDANT KNOWINGLY CONSPIRED TO DISTRIBUTE OR POSSESS WITH THE INTENT TO DISTRIBUTE.

While the Court's charge was clear that the jury must be unanimous that at least one of the substances meets the definition of a controlled substance analogue, the further instruction that the jury need not be unanimous on which particular substance qualifies as a controlled substance analogue causes an issue regarding how much weight to assess under the U.S.S.G.  It is possible the jury may have found one or more of the substances did not qualify as a controlled substance analogue.  The absence of a special verdict sheet creates a sentencing ambiguity.  The ambiguity becomes significant when it comes time to assess the applicable weight under the U.S.S.G.  The defendant acknowledges that weight in a controlled substance is an issue for a sentencing court to determine by a preponderance of the evidence, however, this case is different because it involves controlled substance analogues. The very real possibility exists that the jury agreed with defendant's expert that one or more of the substances did not meet the legal definition of a controlled substance analogue.

Weight and kind of a scheduled controlled substance is a sentencing matter to be determined by a sentencing court, however, a substances status as an analogue is not something a court can determine at sentencing.  A particular substance's status as an analogue is very clearly an issue to be determined by a jury beyond a reasonable doubt because it is an element of the crime.  Absent a special verdict sheet, it is impossible to determine which substances the jury determined were or were not analogues.  In a conspiracy case involving controlled substances the jury would be instructed that the substance is controlled as a matter of law, however, in an analogue case the question of whether a particular substance is a controlled substance analogue is an element of the crime to be determined by the jury.  This position is supported by the concepts laid out in *U.S.A. v. Zillgitt, 286 F.3d 128 (Second Circuit)*.  In *Zillgitt*, the defendant was convicted of

Conspiracy to Distribute both marijuana and cocaine.  The district court sentenced defendant to the higher mandatory minimum for cocaine.   The Court of Appeals held that for sentencing purposes the District Court should have only considered marijuana when sentencing Zillgitt because marijuana carried a less harsh sentence than cocaine.  Mr. Raymond asks this Court to apply the *Zillgitt* concept and sentence him to the substance that weighed the least, which, according to the lab reports I have, is 49.9 grams of PB-22.  This would make the base level offense "12" if the Court applies the 1 to 167 ratio urged by the Government.

The personal and financial circumstances that led Mr. Raymond to the conduct that is the subject of this case are an important factor for this court to consider.  The Probation Department's report does an excellent job of detailing his background and I offer the following in addition.

Mr. Raymond grew up very poor and was always driven by a desire to lift himself out of poverty.  Mr. Raymond's parents divorced when he was very young.  He describes his biological father as a "fair weather father."  His father was not really there for him on a steady basis and provided only minimal financial support.  He describes his mother as his "best friend" but says she moved from job to job and city to city.  He went to 11 schools in 12 years.  His mother remarried and he describes his father as both physically and emotionally abusive.  He believes the stepfather was jealous of his relationship with his mother.  When he was 12 or 13 years old he went camping with his grandfather.  At some point during the trip his grandfather excessive bruising on his chest and arms.   When he told his grandfather that his step-father had caused the bruising the grandfather's only solution was to "pray on it."  Toward the end of 10th grade he was able to convince his father of the abuse.  He moved in with his father and stayed with him until his mother

5

divorced the stepfather in his senior year.    Unfortunately, his father, a retired police officer, has cut off all communications with him because of this case.

Mr. Raymond recalls working at the age of 9 years old in flower shop owned by a relative of his step-father helping to make boutonnieres and corsages.  As soon as he was 16, he got a sales job in a Florsheim shoe store.  He recognized then that he had a genuine talent for sales work. Eventually he worked in sales in the cell phone business.  Commission sales were attractive to him because he was not limited to a pay check – the harder he worked the more he made.  When he became a father, that drive amplified because he wanted to give his children everything he lacked as a child.  As more and more cell phone businesses opened it became harder and harder to make a living selling phones.  He fell back in to extreme poverty, eventually living with his current wife and 3 children in what he calls a 200-square foot "roach motel" room with no refrigerator.  The family had to keep their food in a Styrofoam cooler.  It is under these circumstances that he became involved with Roger Upchurch and the business that led to his convictions.  Upchurch's enticement came at a vulnerable financial time in his life.  In less than two years he says, "I went from the gutter to a gated community."  His convictions have now placed his family back in to poverty.  His wife depends on social services to make ends meet and he feels powerless to help.  He is keenly aware of the damage he has done to his family.  It is against this backdrop of poverty and abuse that led him in to the business that resulted in his convictions.  The substantial money he was able to earn were an intoxicant to a person that in middle school traded his lunch money to rent a pair of Nike shoes for the afternoon.

Mr. Raymond requests the Court find he is responsible for 49.9 grams of PB-22 as opposed to the 104,143.9 grams of total substance urged by the Government.  Furthermore, he urges the Court to find the appropriate conversion ratio is 1 to 1 as opposed to 1 – 167 suggested by the Government.

Dated: December 9, 2017

s/
_____
Michael Spano
Bar Roll No.:  508163
Attorney for Defendant
304 South Franklin Street
Syracuse, NY 13202

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                  Plaintiff,

                                          CERTIFICATE OF SERVICE

v.                                     Criminal Action No.:
                                          5:15-CR-00081-001 (NAM)

ANDREW RAYMOND,

                  Defendant.
_____

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that a true and correct copy of the foregoing Sentencing

Memorandum was served by CM/ECF, on December 9, 2017, on all counsel or

parties of record.

                                              s/
                                    Michael Spano